# Casteel v. Sparks et al.

January 27, 1950.

Emil Beatty, Judge.

William A. Young and H. M. Shumate for appellant.

J. R. Llewellyn, C. P. Moore, and E. B. Rose for appellees.

JUDGE LATIMER—Reversing.

Appellant, Oscar Casteel, as Clerk of the Jackson County Court was Clerk of the Fiscal Court. KRS 67.120. Appellee, George Sparks, was County Judge of Jackson County, and as such was a member of the Fiscal Court and its presiding officer. KRS 67.040.

The difficulty out of which this action arose appears to be the refusal of appellant to obey the orders of the Court. On the 18th day of August, 1941, the Fiscal Court of Jackson County issued refunding bonds in the amount of $25,000, and to provide for the payment of same, entered this order:

"Orders Jackson Fiscal Court, "Special Term Jackson County Fiscal Court, Held August 18th, 1941, at McKee, Kentucky, H. N. Isaacs, presiding.

"That the sum of One Thousand Six Hundred ($1600.00) Dollars be and it is hereby appropriated for each of the years beginning July 1st, 1941, and continuing annually each year until said bonds and interest are duly paid, and for each of said years said appropriation of $1600.00 for the purpose hereinabove set out of paying said refunding bonds and interest, coupons shall be allocated in each annual budget for said purpose and this appropriation and allocation for each of said years shall be irrevocable and shall in no wise be impaired by any other appropriations budget allocation of funds and revenues of said county until said bonds and interest thereon shall have been fully paid."

We conclude from the record that the $1600 had been paid annually pursuant to the above order. It appears that at a meeting of the Fiscal Court on January 10, 1948, the County Attorney directed the Court's attention to the fact that the 1948 payment would soon be due and suggested that the Court enter an order approving the payment and authorizing the Clerk to draw his warrant for same. Judge Sparks, as presiding officer of the Fiscal Court, ruled the County Attorney "out of order." On February 16th appellant was notified by appellee through the County Treasurer that unless appellant drew and issued the desired warrant he would be sent to jail.

Judge Sparks says that, after receiving a telegram from W. L. Knuckles, Jr., State Local Finance Officer, stating it would be "O.K." for the Treasurer to disburse funds appropriated in budget for refunding bonds without the Fiscal Court's approval, he sent the County Treasurer, Mr. Moore, to see appellant. The Judge testified: "Leonard Moore was county treasurer. I told him to take the telegram to Oscar Casteel, the county court clerk and show it to him and tell him that I had entered the order Casteel had requested me to enter on my book and since Mr. Knuckles had requested the payment of the money and he was my superior officer that when he saw the telegram I thought he would issue the warrant without any further delay."

Appellant claims that, after this visit of the County Treasurer, he went directly to appellee and again insisted that the County Attorney had advised him that he lacked authority to draw such a warrant without approval of the Fiscal Court, but that he would "take a chance" and do it if appellee would enter an order of the County Court directing that it be done. Although there is contention as to the exact time of entry, such an order was entered.

"Order for Refund of Bonded Indebtedness,

"It is now ordered by the County Court that the County Court Clerk, Oscar Casteel, immediately issue warrant as requested by the State Local Finance Officer, W. L. Knuckles, Jr., to refund amount of bonded indebtedness as set up in the Jackson County Budget

and approved by the Fiscal Court of said County for bonded indebtedness.

"George Sparks, J. J. C. C."

Appellee says that when appellant came to him he was holding quarterly court. He said:

"He came up beside me where I was on the bench and he had the telegram in his hand and said 'what did you say to Leonard Moore about me issuing that warrant?' and I said 'I told Leonard to take this telegram to you and tell you to issue that warrant.' I told him there is no responsibility on you. I said you know that that order is on the book and there is nothing set up in the law as to how it is to be paid. I said if that is a violation of the law it will be on me and not on you. I am taking the responsibility of it. I said there is no need for me to call the magistrates back in and cost the taxpayers of Jackson County eighteen or twenty dollars. He said 'to hell with your orders and the taxpayers of Jackson County, I am not going to pay it.' I said 'I am fining you $3.00 and six hours in jail.'

"I said I don't want to have any trouble with you but I will remit this contempt against you if you will issue the warrant."

There is considerable contradiction in the testimony as to what exactly took place at this time. Anyway, appellee told appellant: "I am fining you $3.00 and 6 hours in jail." This all happened in the morning of February 16th. In the afternoon the jailer took appellant to jail under the authority of the following commitment:

"County Court
"State of Kentucky
"Jackson County

"You are commanded to commit Oscar Casteel, charged with contempt of Order every 6 hours until order is complied with, he having * * * as required by law.

"This 16 day of Feb. 1948.

"George Sparks, Clerk."

On the following morning appellant was brought before the Judge, at which time demand was again made that the warrant be drawn, and again a refusal so to do.

The testimony of a number of witnesses, including appellant, himself, the County Attorney, and the jailer, shows that the Judge, upon appellant's refusal to issue a warrant at this time, orally sentenced appellant to jail until March 31st, or until the next meeting of the Fiscal Court, and directed the jailer to "put him behind the 'slams' and let nobody talk with him until he gave them permission." The Judge denied making this statement but does admit that he told the jailer to treat him as other prisoners and let no one talk to him without permission.

The County Attorney says that he advised the Judge that he had no legal right to punish for contempt in this fashion and that the Judge replied, "he didn't want to hear any more of that foolishness; that he would keep him in jail as long as he wanted to." This, also, the Judge denies. Anyway, appellant was taken back to jail and remained until sometime in the afternoon when he was released upon a writ of habeas corpus.

Appellant instituted this action in the Jackson Circuit Court seeking to recover from appellee damages for wrongful imprisonment.

Appellant's motion for change of venue was sustained and, pursuant to agreement of the parties, Owsley Circuit Court was selected as the forum, where trial was had.

At the conclusion of all the evidence both appellant and appellee filed motion for directed verdict. Appellant's motion was overruled. Appellee's motion was sustained and the jury directed to return a verdict in favor of appellee. This appeal is prosecuted from that judgment.

The first ground urged for reversal is error of the court in overruling appellant's motion for a peremptory instruction; one, because appellee had no authority, either as County Judge or as Presiding Officer of the Fiscal Court, to require appellant to perform the act, for refusal to do which he was sent to jail; and, two, because appellee admittedly exceeded the statutory limits of his authority to punish for contempt.

It is hardly necessary to state here that the power of punishment for contempt is regarded as an essential

element of judicial authority. We quite agree with appellee that the law has long been settled that a judge who is presiding within the scope of jurisdiction cannot be held for damages for inflicting punishment for contempt.

Generally contempt is thought of as either contempt in the presence of the court, which involves disorderly behavior or insolent language which impairs due respect for the court's authority, or contempt which arises from acts which tend to hinder, delay or obstruct the administration of justice, such as disobedience of orders. The latter are usually committed in the course of judicial process, or in the execution of the court's judgments.

With these two generally accepted rules, we proceed to an analysis of this case. To begin with, pursuant to KRS 67.040(2), the County Judge, presiding over the Fiscal Court, shall preserve order and may fine and imprison for contempt of court in the same manner as the Presiding Judge of the County Court.

The Fiscal Court is a court of record with very definite statutory powers. Had there been an order of the Fiscal Court directing appellant to issue the warrant herein, followed by a refusal to obey, under the statute above the County Judge, acting in his capacity as presiding officer of the Fiscal Court, could no doubt, within the prescribed limitations, punish for contempt. The record shows, although somewhat disputed, that the County Attorney suggested that such an order be entered. The presiding officer ruled the County Attorney "out of order." No such order was entered and the Fiscal Court adjourned. The County Judge demanded that appellant issue the warrant. Obviously, this could be no more efficacious than a demand made by any other member of the Fiscal Court. The County Attorney, who is supposed to be the adviser of county officials, advised appellant not to issue the warrant until the Fiscal Court had so ordered.

As is seen by the recital above, the County Judge insisted that the warrant be executed, and, upon appellant's refusal so to do, threatened to and did send appellant to jail. He entered an order as Judge of Jackson County Court, ordering appellant to carry out an order

which should have been adopted by the Fiscal Court. There was no judicial process or adjudication of the matter in the County Court which could be used as a basis for the entry of such an order in the County Court. Consequently, it will be observed that the County Court was without jurisdiction to enter or to enforce such order.

It will be noted in the answer that appellee alleged the punishment for contempt was solely for disobedience to the order. Appellee stated in direct examination that the refusal to carry out the order was during a session of the quarterly court. Upon cross-examination, however, appellee was asked what the act of contempt was. He replied: "His refusal to obey my order. When I said you will enter that order and told him that I wanted to save the taxpayers of Jackson County money and he said 'to hell with your orders and the taxpayers of Jackson County, I am not going to write it.'" To the next question—"What was his contempt of your court, his refusal to issue the warrant and obey your order, or his language and behavior in your court," he answered, "His insolent behaviour."

We now revert to the kinds of contempt which may be committed. There can be no question but that an attorney, as an officer of the court, labors always under the peculiar duty of maintaining the respect due to courts. If such insolent language was used, obviously, there was contempt in the presence of the court. But the difficulty arises when we look at the pleadings. The pleadings will not support that idea of contempt, as it is alleged that the contempt was for the failure to obey the order, and it is not charged that it was the use of disrespectful and insolent language in the presence of the court.

The law is so well settled as to the power and the extent of power of commitment for punishment for contempt that it becomes unnecessary to discuss that question here. Even though it be true that there was an oral commitment for a certain period, or for a longer period than the court was justified in assessing, or had power to assess, the fact remains that appellant was released under habeas corpus. It is unnecessary to discuss that phase of the matter here.

Under the pleadings and evidence here, the court should have sustained appellant's motion for a peremptory instruction, leaving the amount of damages to be assessed by a jury.

We find no merit in the contention that the court erred in overruling appellant's demurrer to the second paragraph of appellee's answer, since that portion of the pleading went to the question of justification.

Wherefore, the judgment is reversed for proceedings consistent herewith.